NUNC PRO TUNC
2/24/20

**FILED**

Feb 24 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ Julieo          DEPUTY

1  Peter Strojnik (Sr.),
2  7847 N. Central Avenue
   Phoenix, Arizona 85020
3  Telephone:  (602) 524-6602
   ps@strojnik.com
4

5                **UNITED STATES DISTRICT COURT**
                **SOUTHERN DISTRICT OF CALIFORNIA**
6

7                                          Case No: 3:19—cv-0650 BAS BGS

8                                          **STROJNIK'S REPORT OF IME**
                                           **CONDUCTED ON 2020-02-20**
9  EVANS HOTELS, LLC,
                        Counter-Claimant,
10

11                      vs.

12 PETER STROJNIK,
                        Counter-Defendant.
13

14 _____

15 PETER STROJNIK,
                        Counter-Counter-Claimant,
16

17                      v.

18 EVANS HOTELS, LLC,
                        Counter-Counter-Defendant
19

20

21      I met Dr. Greenfield at 12:00 noon on February 20, 2020, at his offices in San

22 Diego,  3737 Moraga Avenue, Suite A-106, San Diego, CA 92117.

23      Dr. Greenfield introduced himself as an orthopedic surgeon.  He is a pleasant,

24 articulate, congenial and well-groomed gentleman. His approach to the independent

25 investigation was non-confrontational.   In order to dispel any tension during the

26 examination, Dr. Greenfield infused humor and levity into the interaction, thus achieving

27 a level of mutual trust. Dr. Greenfield appeared well versed in his trade.

28

1    I was put into the examination room by an assistant.  The room was equipped with

2  an examination table, a fixed patient chair, a swivel examiner chair, a sink and a series of

3  Chinese motif pictures.

4    Dr. Greenfield entered the examination room timely. We exchanged introductory

5  pleasantries. I asked him whether he was aware of the scope of the examination and he

6  responded that Ms. Casillas requested that he conduct an orthopedic examination. He

7  stated that he was unaware of the dispute requiring the IME.

8    I responded that this was an ADA examination of "disability" as defined by the

9  2008 ADA Amendment Act and 28 C.F.R. 36.105. I offered Dr. Greenfield a copy of Dkt.

10 No. 82, *Second Stipulation to Change Date of Physical Examination* and we together read

   the following provision:

11 | date. Whereas, the scope of Dr. Greenfield examination shall be to determine

12 | whether Mr. Strojnik's condition(s) fall within the definitions of "disability"

13 | pursuant to 2008 ADA Amendment Act and 28 C.F.R. 36.105 and assess impact and

14 | limitations on major life activities related thereto as related to allegations of

15 | obstacles or ADA violations in complaint.

16    Dr. Greenfield confided that he was and orthopedic surgeon and not an ADA

17 disability expert. I explained that the term "disability" under the ADA is a word of legal

18 art and that it is not synonymous with the medical term "disability".  In order to more

19 clearly understand the scope of the term "disability" I offered him a copy of the 2008 ADA

20 Amendment Act and a copy of 28 C.F.R. 36.104 along with the following documents:

   ///

21 ///

22 ///

23 ///

24 ///

25 ///

26

27 ///

28 ///

28 CFR 36.105 - Definition of Disability

2008 ADA Amendment Act

2018-02-20 MRI Right Side Neural Foram...

2018-03-05 CT Scan Report Renal Cancer

2018-07-25 MRI Report Degenerative Ri...

2018-08-01 Dr. Lee Report for Disability ...

2018-09-04 Romano Letter

2019-06-18 Knee Replacement Card

2020-01-28 Emergency Visit

2020-02-19 - Stipulation re Medical Exam

2023-08-31 (Permanent) Disabled Placards

ADA DISABILITY GRAPHIC

ADA IME Questionnaire with Strojnik Ans...

ADA IME Questionnaire

Relation Between Disability and Major Li...

I also offered him a memory stick with the above documents which Dr. Greenfield graciously accepted.

Orthopedic examination ensued. Dr. Greenfield inquired the extent of my disabilities, I referred Dr. Greenfield to the ADA Disability Graphic, and particularly to the following:

1. prostate cancer and genitourinary impairment; and
2. renal cancer; and
3. severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy; and
4. degenerative right knee (missing part of limb replaced with prosthesis); and
5. Substantial limitation on the use of both shoulders, elbows and wrists to reach and twist; and
6. Pleurisy; and
7. Major depressive disorder, bipolar disorder, post-traumatic stress disorder; and
8. Hypertension (200/100); and
9. Record of (1) – (7); and
10. Being regarded as having (1)-(7).

Dr. Greenfield reaffirmed that he is only qualified in the field of orthopedics, that is, items 3, 4 and 5, and that his examination would be limited to my current limitations

3

with respect to these items. In the spirit of gaiety,  Dr. Greenfield shared a comical interlude regarding medical term "femoral neuropathy" he experienced in one of his many orthopedic surgeons' conventions.

He inquired whether I smoke. I responded that I smoke cigars and asked him if he partakes. He responded affirmatively, although he smokes quite rarely. He asked me what brand I smoke and I told him Quorum Double Gordos. He stated that he prefers Cuban Cohibas that his friends bring him when they travel abroad, but smokes only once a month or so.

He asked me my height (5'11") and weight (180 lbs). He inquired whether I had taken any medications prior to the examination and I told him I ingested 3 Naproxen at 10 a.m. to alleviate the pain experienced during the travel from Phoenix to San Diego. He again confirmed that his examination will be limited to determining my orthopedic limitations caused by orthopedic conditions existing at the time of the examination.

He asked me to explain the following orthopedic limitations:

(1) Substantial limitation on the use of both shoulders, elbows and wrists to reach and twist; and
(2) Severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy; and
(3) Degenerative right knee.

With respect to (1), I confirmed that this impairment substantially limits the following major life activities: Performing manual asks, sleeping, reaching, lifting, writing, working.

With respect to (2), I confirmed that this impairment substantially  limits the following major life activities: Walking, standing, sitting, bending, sleeping, working.

With respect to (3) I confirmed that this impairment substantially limits the following major life activities: Walking, standing, sitting, bending, sleeping, working.

I referred Dr. Greenfield to the graph titled *Relation Between Strojnik's ADA Disability and Major Life Activity* which I provided to him.

He then measured the range of motion of my shoulders, elbows and wrists. He followed up with measurement of my upper and lower arm muscles, and provided a mechanical device to measure the grip strength in both hands.

1    Dr. Greenfield continued with inquiries relative to (2) above. I confided that I have

2    been subjected to 3 initial nerve blocks between L-5 and S-1, and a subsequent

3    reapplication of the 4th nerve block. I stated that nerve blocks are effective for several

4    months. I stated that the next step in treating this condition is surgical intervention.

5    Dr. Greenfield then visually inspected the range of hip motion.

6    Dr. Greenfield also measured the range of motion of the right leg and compared

7    with the left. He measured the upper and lower leg strength of the right leg and compared

     to the left. He measured the circumference of both right and left calves, knees and thighs.

8    Dr. Greenfield then inquired how far I can walk. I stated that I can get from the

9    garage in my home and to the patio where I smoke cigars and work.

10   Prior to leaving, we engaged in small talk, family, etc. I told him the Irascible Parrot

11   joke and he told me to drive carefully going back to Phoenix.

12   DATED this 21st  day of February 2020.

13

14   PETER STROJNIK

15

16   Plaintiff

17   The original mailed to the District Court this 21st  day of February 2020.

18   Copy emailed  this 21st  day of February 2020 to:

19
     Nadia P. Bermudez and Lindsay Casillas
20   nbermudez@klinedinstlaw.com
     lcasillas@klinedinstlaw.com
21   Lawyers for Evans

22
     /s/
23

24

25

26

27

28



ter Stru_
_ntral Avenue
_rizona 85020

**Clerk of Court**
**United States District Court**
**Southern District of California**
333 West Broadway, Ste 420
San Diego, CA 92101

FEB 2 4 2020
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
RECEIVED

92101$3806 C097