1  Peter Strojnik (Sr.),
2  7847 N. Central Ave.
   Phoenix, Arizona 85020
3  602-524-6602
   ps@strojnik.com
4

NUNC PRO TUNC
4/16/20

**FILED**

Apr 22 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/ Julieo _____ DEPUTY

5             **UNITED STATES DISTRICT COURT**
              **SOUTHERN DISTRICT OF CALIFORNIA**
6

7  PETER STROJNIK,                          | Case No: 19-cv-0650

8              Plaintiff/Counter-           | **PLAINTIFF'S RESPONSE TO**
   Defendant/Counter-Counter-Claimant,      | **DEFENDANT'S MOTION TO**
9                                           | **COMPEL**

10             vs.                          | **AND**

11 EVANS HOTELS, LLC. Dba THE               | **RENEWED PLAINTIFF'S MOTION**
12 LODGE AT TORREY PINES                    | **TO COMPEL [74]**

13         Defendant/Counter-Claimant/Counter-
14              Counter-Defendant.

15

16                        **INTRODUCTION**

17     Five issues remain in this case: (1) whether Strojnik is a vexatious litigant, (2)

18 whether Strojnik breached the October 8, 2018 settlement agreement, (3) whether Evans

19 breached the October 8, 2018 settlement agreement and committed defamation, (4)

20 whether the October 10, 2018 consulting agreement was fully performed and (5) whether

21 Ms. Casillas tempered with Dr. Greenfield, a witness, when she instructed him to conduct

   an orthopedic examination and not an ADA examination as ordered.

22     In light of Plaintiff's Motion for Summary Judgment dated March 24, 2020

23 ("MSJ") and mailed to the Court on the same day[1], the vexatious litigant motion is dead

24 and the breach of the October 8, 2018 settlement and consulting agreements on life

25

26

27 _____
   [1] As of April 12, 2020, the Motion has not yet made it to the docket. The Court should
28 investigate why Strojnik's submissions are not immediately upon receipt noted in the
   docket and filed, nunc pro tunc, to the date of mailing.

support.  The question of Ms. Casillas' violation of 18 U.S.C. §1512(b)(1) shall await Dr. Greenfield's testimony.

## DISCLOSURES MADE BY STROJNIK

In his 2020-02-26 Disclosure to Evans, Strojnik disclosed the following:

**A. Statement setting forth all facts that support the producing party's contention that the Vexatious Litigant Motion should, or should not, be granted.**

   1. Plaintiff has numerous disabilities as the term "disability" is defined in the 2008 ADA Amendment Act and 28 C.F.R. 35.105.

   2. Plaintiff will testify to the truth of the following:

| NO | QUESTION | ANSWER |
|----|----------|--------|
| 1 | Does Strojnik suffer from **prostate cancer and genitourinary condition** (irrespective of possible remission)? | Yes |
| a | Does this impairment cause Strojnik pain and difficulty while urinating and engaging in procreation? | Yes |
| b | Does impairment substantially limit a major life activity? | Yes |
| c | Did Strojnik undergo genitourinary surgery? | Yes |
| d | If Strojnik had not achieved ameliorative effects of mitigating measures through genitourinary surgery, would his condition substantially limit the major life activities of urination and procreation? | Yes |
| e | Does the Strojnik have a history of prostate and genitourinary impairment? | Yes |
| f | Is Strojnik regarded as having a prostate and genitourinary impairment? | Yes |
| g | Does the State of Arizona regard Strojnik as being disabled? | Yes |
| 2 | Does Strojnik suffer from **renal cancer**? | Yes |
| a | Does this impairment cause Strojnik pain in the abdominal area and consequential difficulty in walking, standing, sitting, working or urinating? | Yes |
| b | Does impairment substantially limit a major life activity? | Yes |
| c | Did Strojnik undergo renal cancer surgery? | Yes |
| d | If Strojnik had not achieved ameliorative effects of mitigating measures (renal cancer surgery), would his condition substantially limit a major life activity? | Yes |
| e | Does the Strojnik have a history of renal cancer? | Yes |
| f | Is Strojnik regarded as having renal cancer? | Yes |
| g | Does the State of Arizona regard Strojnik as being disabled? | Yes |
| 3 | Does Strojnik suffer from **severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy**? | Yes |
| a | Does this impairment cause Strojnik excruciating pain while walking, standing, sleeping or performing another major life activity when active? | Yes |

| | | | |
|---|---|---|---|
| 1 | b | Does the impairment substantially limit Strojnik's major life activities such as waling, standing, sleeping, working? | Yes |
| 2 | c | Did Strojnik receive mitigating measures such as nerve blocking and pain medication? | Yes |
| 3 | d | If Strojnik had not achieved ameliorative effects of mitigating measures, would his condition substantially limit a major life activity? | Yes |
| 4 | e | Does the Strojnik have a history severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy? | Yes |
| 5 | f | Is Strojnik regarded as suffering from severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy? | Yes |
| 6 | g | Does the State of Arizona regard Strojnik as being disabled? | Yes |
| 7 | 4 | Does Strojnik suffer from **degenerative right knee**? | Yes |
| 8 | a | Does the impairment cause Strojnik pain while walking, standing, sitting, sleeping and working? | Yes |
| 9 | b | Does impairment substantially limit Strojnik's major life activities such as walking, standing, sleeping, working? | Yes |
| 10 | c | Did Strojnik receive ameliorative effects of mitigating measure (prosthetic knee)? | Yes |
| 11 | d | If Strojnik did not achieve ameliorative effects of mitigating measures prosthetic knee), would his condition substantially limit a major life activity? | Yes |
| 12 | e | Does the Strojnik have a history of degenerative right knee? | Yes |
| 13 | f | Is Strojnik regarded as suffering from a degenerative right knee? | Yes |
| 14 | g | Does the State of Arizona regard Strojnik as being disabled? | Yes |
| 15 | h | Is Strojnik missing a part of a limb (right knee)? | Yes |
| 16 | 5 | Does Strojnik suffer from **limitation on the use of both shoulders, elbows and wrists to reach and twist**? | Yes |
| 17 | a | Does this impairment substantially limit Strojnik's use of the arm, wrist and fingers and reaching by virtue of pain, numbness, difficulty in twisting and turning wrist, reaching and working? | Yes |
| 18 | b | Does the impairment substantially limit a major life activity such as using hands, reaching, twisting of the hand, working and sleeping? | Yes |
| 19 | c | Does the Strojnik have a history of inability to twist lower arm at the elbow and from difficulty engaging hand in a twisting action? | Yes |
| 20 | d | Is Strojnik regarded as suffering from inability to twist lower arm at the elbow and from difficulty engaging hand in a twisting action? | Yes |
| 21 | f | Does the State of Arizona regard Strojnik as being disabled? | Yes |
| 22 | 6 | Does Strojnik suffer from **episodic pleurisy**? | Yes |
| 23 | a | Does this impairment substantially limit Strojnik's ability to breathe, sleep, stand straight, walk and work? | Yes |
| 24 | b | Does the impairment substantially limit a major life activity such as breathing, walking, standing straight, sleeping? | Yes |
| 25 | c | Does the Strojnik have a history of pleurisy? | Yes |
| 26 | d | Is Strojnik regarded as suffering from pleurisy? | Yes |
| 27 | f | Does the State of Arizona regard Strojnik as being disabled? | Yes |
| 28 | 7 | Would Strojnik require the use of a wheelchair if the Strojnik did not receive a knee replacement? | Yes |

| 8 | Would Strojnik require the use of a wheelchair when the severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy is active? | Yes |
| 9 | Would Strojnik require the use of a wheelchair when his breathing is impeded by pleurisy? | Yes |
| 10 | Would Strojnik require the use of a wheelchair when any two of the three of items 7, 8, or 9 were active? | Yes |

3. Plaintiff will testify to the truth of the following:

| PLAINTIFF'S DISABILITY | | | | RELATION | |
|---|---|---|---|---|---|
| DESCRIPTION | DISABILITY PRONG | | | MAJOR LIFE ACTIVITY | 28 C.F.R. 36.105 REFERENCE[2] |
| | Impairment | History Of | Req'ed As | | |
| Prostate Cancer And Genitourinary Impairment | X | X | X | Major Bodily Function (normal cell growth, genitourinary, bladder reproductive) | (c)(1)(ii) (d)(1)(iv) (d)(1) (v) (d)(1) (vi) (d)(1)(viii) (d)(2)((iii)(F) (e)(1)(2) (f)(1) |
| Renal Cancer | X | X | X | Major Bodily Function (normal cell growth) | (c)(1)(ii) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)((iii)(F) (e)(1)(2) (f)(1) |
| Severe Right-Sided Neural Foraminal Stenosis With Symptoms Of Femoral Neuropathy | X | X | X | **Walking, standing, sitting, bending,** sleeping, **working** | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)((iii)(D) (e)(1)(2) (f)(1) |
| Degenerative Right Knee | X | X | X | **Walking, standing, sitting, bending,** sleeping, **working** | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) (d)(2)((iii)(D) (e)(1)(2) (f)(1) |
| Limitation On The Use Of Both Shoulders, Elbows And Wrists To Reach And Twist | X | X | X | **Performing manual asks, sleeping, reaching, lifting, writing, working** | (c)(1)(i) (d)(1)(iv) (d)(1)(v) (d)(1)(vi) (d)(1)(viii) |

---

[2] Addendum A. Referenced sections are reproduced in **bold**.

4

| | | | | | (e)(1)(2) (f)(1) |
|---|---|---|---|---|---|
| Pleurisy | X | X | X | Performing manual asks, sleeping, walking, reaching, lifting, writing, working | (c)(1)(i) (d)(1)(iv) (d))1)(v) (d)(1)(vi) (d)(2)((iii)(D) (e)(1)(2) (f)(1) |
| As Described in Dr. Lee's 8/1/18 Report | X | X | X | As described in Report | (c)(1)(i) (e)(1)(2) (f)(1) |

4. Plaintiff is spending his golden years traveling particularly to California whose breathtaking vistas act as a beacon to Arizona residents.

5. While traveling in California, Plaintiff tests places of public accommodation for ADA compliance.

6. Plaintiff's practice is to initially send a place of public accommodation a curtesy letter advising of the ADA violations encountered.

7. If the public accommodation does not respond, Plaintiff files suit.

8. All of the suits filed by Plaintiff are factually meritorious and none were filed for the purpose of harassment.

9. Plaintiff is aware of the *CREEC* decision which permits testers to test for ADA compliance.

10. Plaintiff will meet any evidence of any wrongdoing offered by Defendant with contrary evidence.

11. Additional evidence on which Plaintiff may rely during the evidentiary hearing.

**B. Evidence on which Strojnik may Rely During the Evidentiary Hearing**

1. The documents described in Addendum A which are produced herewith.

2. All evidence disclosed in subsection A.

3. All evidence produced by Evans.

Addendum A included the description of the following documents produced to Evans:

| | |
|---|---|
| 0-2020-02-26 Vexatious Litigant Disclosure | 2020 ADA IME Questionnaire with Strojnik Answers |
| 28 CFR 36.105 - Definition of Disability | 2020 ADA IME Questionnaire |
| 2008 ADA Amendment Act | 2020 Relation Between Disability and Major Life Activity |
| 2018-02-20 MRI Right Side Neural Foraminal Stenosis | 2020-01-15 Answers to DR1 |
| 2018-03-05 CT Scan Report Renal Cancer | 2020-01-28 Emergency Visit |
| 2018-07-25 MRI Report Degenerative Shoulder | 2020-02-19 Doc 82 - Stipulation re Medical Exam |
| 2018-08-01 Dr. Lee Report for Disability Plackard | 2020-02-21 Strojnik IME Report |
| 2018-08-15 to Bahia | Brooke v. HP Order Denying Vexatious Litigant |
| 2018-08-31 Disabled Placards | Docket Report |
| 2018-08-31 Email to GM | Goolsby v. Gonzales Adoption Doc 44 Adopting Doc 37 |
| 2018-08-31 Reminder Jim Green | Goolsby v. Gonzales Doc 37 |
| 2018-09-04 Romano Letter | Investigation Questionnaire |
| 2018-10-10 Evans Consulting Agreement | Strojnik v. Hyatt Vexatious Litigant Motion Denied |
| 2018-10-10 Evans SA | |
| 2018-10-24 Resignation | |
| 2018-12-21 to Bill Gross | |
| 2019-01-09 Follow Up Email to Gross | |
| 2019-02-13 Email string with DeBeers | |
| 2019-05-01 from Amanda Beane | |
| 2019-05-22 Email string with Bermudez re M2D and Threats | |
| 2019-05-22 from Nadia Bermudez_000765 | |
| 2019-05-23 Exchange re M2D and Threats | |
| 2019-05-24 Email string with Bermudez | |
| 2019-06-18 Knee Replacement Card | |
| 2020 ADA Disability Graphic | |

As previously indicated, on March 24, 2020, Strojnik filed a Motion for Summary Judgment supported by extensive declaration and 14 Exhibits. The Exhibits included the October 10, 2018 consulting and settlement agreements, Exhibits 10 and 11, and the email string between Strojnik and Evans in house counsel, DeBeers. Referenced documents are incorporated herein.

Obviously, DeBeers possesses her own copies of relevant documents, her own copies of email strings and everything else. All information relating to issues (1) through (4) referenced in the Introduction has been made.

## 1. Vexatious Litigant Discovery Has Been Completed.

As indicated above, the parties complied with Magistrate's order [80] and produced one to the other all information relative to the issues along with supporting documentation.

## 2. All Evidence Relevant to the Alleged Breach of Contract by Strojnik has been Made.

A breach of contract claim requires proof of (A) enforceable agreement (B) breach and (C) causally connected damages.

A. Both Evans and Strojnik have copies of the settlement and consulting agreements. Neither disputes their enforceability. Neither claims that either is ambiguous.

B. The alleged breaches by Strojnik are proven by alleged non-performance. Evidence of non-performance can be based on testamentary and documentary evidence. Here, Strojnik's documentary evidence consists of the e-mail string with DeBeers in which she admits receipt of the receipt of the template questionnaire in compliance with the consulting agreement. Exhibit 12 to MSJ. In connection with the settlement agreement, Strojnik produced the same e-mail string showing DeBeer's misreading of the December 21, 2018 letter to Mr. Bill Gross, Exhibit 5 to the MSJ, and the Complaint [1]. *See* 200-03-24 Declaration of Peter Strojnik filed along with the MSJ. There is nothing more to produce.

Evans' breach of the settlement agreement is proven by the choice of forum provision in the settlement agreement, ¶ 16.

C. Evans' purported damages for the claimed breach are strictly in the possession of Evans.

Strojnik's damages for breach by Evans are currently unquantifiable as indicated in [72].

### EVANS' CONTINUED REFUSAL TO PROVIDE DISCOVERY

On December 14, 2019, Strojnik issued Discovery Request No. 1 to Evans. Evans' lawyers submitted their objections in lieu of responses on January 16, 2020. Because Evans' lawyers could not find a 5 minute period to discuss the deficiencies with Strojnik, Strojnik filed a Motion to Compel [74].

On February 13, 2020, the Magistrate ruled [80] that the Motion to Compel was "moot" stating:

The undersigned understands the permitted discovery to extend to all evidence on which each side intends to rely during the evidentiary hearing, which in turn concerns the merits of Defendant's Vexatious Litigant Motion.

Therefore, as stated during the conference, the Court **ORDERS** the parties to produce to one another: (1) a statement setting forth all facts that support the producing party's contention that the Vexatious Litigant Motion should, or should not, be granted; and (2) all evidence on which the producing party may rely during the evidentiary hearing currently set for April 10, 2020 no later than **February 26, 2020.**

7

Based on this ruling, Plaintiff's Motion to Compel (ECF No. 74) is **DENIED as moot[3]**.

It is unclear how Strojnik's request for an order to Evans to produce perfectly relevant information is "moot". On the one hand, the Court ordered an IME, denied Strojnik a Rule 30(b)(6) deposition of Evans, but on the other hand Strojnik's discovery requests are "moot". Clearly, the Magistrate was incorrect.

The only remaining discovery issues relate to Evans' failure to provide the following information:

A. Evans' prefiling due diligence, *see* [74] at Exhibit 1, Request to Admit (RA) 1, Interrogatory (ROG) 1, Request for Production (RP) 1.

B. Evans' discovery of any evidence to support the vexatious litigant motion, *see id.* at RA 2, ROG 2 and RP 2.

C. Evans' knowledge that filing a vexatious litigant motion would encroach on Strojnik's 1st Amendment Right to redress. *See id.* at RAs 3 and 4.

D. Evans' prefiling factual and legal investigation relating to its Request for Judicial Notice. *See id.* at RAs 5, 6, 7, 8, and ROG 3

---

[3] The magistrate also denied Strojnik the right to take a Rule 30(b)(6) deposition of Evans, stating at footnote 1:

> During the February 12 conference, Plaintiff specifically raised a request to take Defendant's 30(b)(6) deposition and asked that the Court address that request in this Order so that the denial could be appealed to the District Judge. However, Plaintiff makes no such request in the Motion to Compel. *See generally* ECF No. 74. This issue thus appears to be a brand new dispute without any underlying motion practice. Nor have the parties met and conferred or otherwise complied with Judge Goddard's Civil Pretrial Procedures with respect to this dispute. Additionally, the Court finds that a 30(b)(6) deposition of Defendant's representative is not necessary to prepare for the evidentiary hearing on the Vexatious Litigant Motion. Accordingly, the Court **DENIES** Plaintiff's oral motion as premature.

The trouble with Magistrate's footnote is that Strojnik did not *request* a ruling to take a Rule 30(b)(6) deposition. Strojnik simply stated that he *intended* to take the deposition. Where the Magistrate got the idea that this issues was in dispute remains a mystery.

E. Evans' admission that Strojnik has never identified himself as a practicing lawyer in connection with this case. *See id.* at RA 9, ROG 4 and RP 3.

F. Evans' knowledge that it has no reason to believe that Strojnik is *not* disabled as defined in the 2008 ADAAA and 28 C.F.R. 36.105. *See id.* at RA 10, ROG 5 and RP 4[4].

G. Evans' confirmation of the terms of the settlement agreement. *Id.* at RA 11, 12, 13.

H. Evans refusal to list witnesses and exhibits. *Id.* at ROG 6, and RA 5.

I. Evans' refusal to provide information relative to Evans' communications with any person relative to Evans' alleged claims. *Id.* at ROG 7, RP 7.

J. Evans' refusal to disclose the factual and legal bases for any denial of any RA. *Id.* at 8 and RP 8.

## CONCLUDING THOUGHTS AND PRAYER FOR RELIEF

It has been 30 years since the passage of the Americans with Disabilities Act, but the discrimination against the disabled persists. During this thirty year period, ADA offenders have portrayed themselves as victims to all segments of society, from the media to the general polity, from attorneys general to state legislators, from news editors to lawyer associations. Unfortunately, they have been very successful.

This is a dangerous pattern in the evolution in ADA civil rights. Some ableist advocates, as Evans here, allege scandalous and impertinent plots and tales as a furtive reconnaissance mission to determine whether the memorable observation by the Honorable Judge Melinda Harmon in *Gilkerson v. Chasewood Bank*, 1 F.Supp .3d 570, 596-97 (S.D. Tex., 2014) might apply in *this* court. In *Gilkerson*, Judge Harmon displayed the courage to state what most know from experience:

> Testers have been an accepted and successful means of enforcing civil rights statutes under the Fair Housing Act and Title VII of the Civil Rights Act of

---

[4] In various papers Evans references a video ostensibly showing Strojnik "walking briskly". This video is inadmissible because it shows significantly less than 24 frames per second. It appears to contain cartoonish 10 frames per second that does not accurately reflect the event which it purports to document. Regardless, this is utterly irrelevant under the 2008 ADAAA and 28 C.F.R. 36.105.

1964, although **a number of courts addressing Title III cases have been skeptical, and even hostile.** *See* Lee, *Giving Disabled Testers Access to Federal Courts,* 19 Va. J. Soc. Pol'y & L. at 321–23; Johnson, *Testers Standing up for Title III of the ADA,* 59 Case W. Res. L.Rev. at 689–702. "As a result of both the Attorney General's limited resources and the limited remedies available to Title III plaintiffs, 'most suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled.'" *Betancourt v. Federated Dept. Stores,* 732 F.Supp. 2d 693, 701 (W.D.Tex.2010) *quoting Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1062 (9th Cir. 2007). (Emphasis supplied.)

Evans' strategy is dangerous. Evans is aware of a significant social undercurrent of the hostile skepticism toward ADA plaintiffs. Evans relentlessly bids to awaken potential skepticism in this Honorable Court. By pursuing arousal of cynicism, Evans has artfully created an intolerable level of distrust between Strojnik and this Honorable Court. The creation of uncertainty and distrust is Evans' end game[5].

Evans is trying to turn this Courts. Evans is relentlessly attempting to morph the ADA from a desegregationist expression of public policy into the unrecognizable Okefenokee swamp slither. There is nothing more pathetic that a whining and sniveling lawbreaker.

The judiciary is the last and the only branch of the government still universally trusted. Defendant's attempts to sow distrust is, on the case level, designed to benefit Evans and prejudice Strojnik. On the grander scale it seeks to diminish judiciary's well-earned trust and respect to that of the ever diminishing reputations of the executive and legislative branches.

Strojnik prays on this Easter Monday that this does not happen here.

Evans' prayer for sanctions is perversely backward: It is Evans who is holding back information, not Strojnik. It is Evans' counsel who is violating 28 U.S.C. §1927 by multiplies the proceedings unreasonably and vexatiously, not Strojnik. It is Evans who

---

[5] The level of dislike is evident from Magistrate's denial of Strojnik's motion to continue the ENE because he would be thousands of miles away from the Courthouse at the appointed time; then denying the motion to continue at a time the Magistrate knew Strojnik would already be away, and threatening sanctions if he does not teleport from the middle of the Atlantic Ocean to the San Diego courthouse. *See* Plaintiff's Response to OSC [93] and 28 U.S.C. §351 Complaint against Magistrate Allison Goddard [99].

refuses to discuss discovery issues with Strojnik, *see* [74] at 1:15-18 and email in the footnote[6]. It is Evans' lawyers who have committed witness tampering, not Strojnik. It is Evans who lacks the common courtesy of stipulating to a postponement of ENE while Strojnik is on vacation far away.

It is Evans who is turning this case into swamp slither, not Strojnik.

DATED this 13th day of April, 2020.

**PETER STROJNIK**

Plaintiff

Mailed to the Southern District of California this 13th day of April, 2020.

And e-mailed to lawyers for Evans the same day.

/s/

_____

[6] "I am available April 16 and 17 anytime."

11



APR 16 2020
RECEIVED

Peter Strojnik
7847 N Central Avenue
Phoenix, Arizona 85020

**Clerk of Court**
**United States District Court**
**Southern District of California**
**333 West Broadway, Ste 420**
**San Diego, CA  92101**