NUNC PRO TUNC
3/26/20

FILED
Apr 24 2020
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ Julieo  DEPUTY

Peter Strojnik (Sr.),
7847 N. Central Ave.
Phoenix, Arizona 85020
602-524-6602
ps@strojnik.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| PETER STROJNIK, | Case No: 19-cv-0650 |
|---|---|
| Plaintiff/Counter-Defendant/Counter-Counter-Claimant, | STROJNIK DECLARATION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE DEFENDANT'S VEXATIOUS LITIGANT MOTION |
| vs. | |
| EVANS HOTELS, LLC. Dba THE LODGE AT TORREY PINES | |
| Defendant/Counter-Claimant/Counter-Counter-Defendant. | |

Strojnik declares under the penalty of perjury that all of the following is true and correct, and that Exhibits[1] attached to the Motion for Summary Judgment are accurate reproductions of original documents and are otherwise correct to the best of Strojnik's knowledge, information and belief:

1. Defendant seeks to have Plaintiff declared a vexatious based on the assertion that:

    Because Mr. Strojnik's litigation history is expansive, and typically frivolous and harassing, this Court has ample record from which to issue the requested pre-filing order against Mr. Strojnik to curb his vexatious litigation[2].

2. Strojnik is a private attorney general and an ADA tester. *See CREEC*[3]. As such, he files many ADA civil rights discrimination cases. Therefore, the burden is on Evans to show that Strojnik's ADA civil rights desegregation cases are enforcement are *patently*

---

[1] All references to Exhibits are to Exhibits appended to MSJ.
[2] *See* Motion [Dkt. 8] at 6:17-19.
[3] *Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1099 (9th Cir. 2017) ("*CREEC*").

*without merit. Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1059 (9th Cir. 2007).

3. Thus far, Evans has been unable to produce even one such case for a simple reason: There isn't one. Therefore, at the hearing on December 10, 2019, Evans pivoted from claiming that Strojnik's civil rights cases are *frivolous* to arguing that Strojnik does not suffer from a "disability" as this term is defined in the 2008 ADA Amendment Act and 28 C.F.R. 36.105. Evans requested that the Court order Strojnik to submit to an independent medical examination to determine whether Strojnik's impairments constitute ADA disabilities. The IME was conducted by Dr. Greenfield, a San Diego orthopedic surgeon. The parties confirmed to the scope of the examination ordered on December 10, 2019[56][4]:

> Whereas, the scope of Dr. Greenfield examination shall be to determine whether Mr. Strojnik's condition(s) fall within the definitions of "disability" pursuant to 2008 ADA Amendment Act and 28 C.F.R. 36.105 and assess impact and limitations on major life activities related thereto as related to allegations of obstacles or ADA violations in complaint.

4. Unbeknownst to Strojnik, however, Ms. Casillas, one of Evans' lawyers, contacted Dr. Greenfield prior to the examination and instructed him to conduct an "orthopedic examination" unrelated to the definition of ADA disability. [88] During the examination, Dr. Greenfield confided that he was not an ADA disability expert[5]. *Id.*

5. Dr. Greenfield's Report is attached. Exhibit 1. Since Dr. Greenfield was instructed to conduct an *orthopedic* examination and not the ordered *ADA* examination, it is of little, if any, value.

---

[4] From memory; please review transcript available to the Court and Evans for confirmation.

[5] The false instruction to Dr. Greenfield represents a violation of 18 U.S.C. 1512 (b) which prohibits any person from engaging in misleading conduct toward another person with the intent to influence the testimony of such person in an official proceeding.

2

6. Of the 23 cases filed by Strojnik in this District, none has been dismissed either procedurally pursuant to Fed. R. Civ, P. 12(b)(1) or on the merits. Exhibit 14[6]. Of more than 100 cases filed by Strojnik in all of California District Courts, 4 have been dismissed procedurally for lack of standing. All are on appeal:

| Case | Dist. Ct. No. | Appeal No. |
|---|---|---|
| *Strojnik v. Singpoli Group, LLC* | Central 2:19-cv-00066 | 19-55310 |
| *Strojnik v. Four Sisters Inns* | Central 2:19-cv-02991 | 19-56523 |
| *Strojnik v. Orangewood, LLC* | Central 8:19-cv-00946 | 20-55162 |
| *Strojnik v. Pasadena Robles Acquisition, LLC* | Central 2:19-cv-02067 | 19-56037 |

7. The above cases were dismissed on jurisdictional grounds. Jurisdictional dismissal is not on the merits. *Ruiz v. Snohomish Cty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1164 (9th Cir. 2016) Therefore, the dismissed and appealed cases do not relate to vexatiousness.

8. It is notable that only Central District Court's decisions need to be appealed. Other districts correctly applied the *CREEC* decision. *See, e.g., Johnson v. Alhambra & O Associates* (2019 E.D. Cal. 2:19-cv-00103 at Dkt. 15), Exhibit 2, *Strojnik v. The Victus Group* (E.D. Cal. 1:18-cv-01620 at Dkt. 15), Exbibit 3, and *Strojnik v. GF Carneros Tenant, LLC* (N.D. Cal. 3:19-cv-03583 at Dkt. 28), Exhibit 4.

9. And in this case, the Court entered judgment for Strojnik [22] thus implicitly recognizing its jurisdiction over Strojnik's ADA claim and the validity thereof.

10. Strojnik, as Congress[7], is acutely aware of the subtle, but prevalent social hostility toward the disabled. Therefore, Strojnik treads carefully before filing an ADA civil rights action. Before filing any ADA lawsuit, Strojnik prepares a pre-filing due diligence report, attaches it to a draft Complaint and submits it to the offending public

---

[6] Strojnik attached Exhibit 14 because Evans variously alleges that Strojnik is filing ADA cases for money. Untrue. In fact, during the past several years working as a civil rights lawyer in the Maricopa County Superior Court, Strojnik earned $1.2M and donated every single penny of the $1.2M to a 501(c)(3) organization for the disabled.
[7] *See* 42 U.S.C. §12101 (a) and (b)

3

accommodation along with a courtesy pre-filing letter. In the matter at hand, Strojnik sent a letter to Mr. Gross[8], Exhibit 5, which stated, in part:

> I am a disabled veteran and an ADA tester. I intended to visit your Hotel on December 8, 2018. During my booking procedure I noted that the Hotel does not provide equal access as required by 28 CFR §36.302(e), and during my stay there I noted that it does not comply with the 2010 Standards of Accessibility Design or California's Unruh and DPA.
>
> In the preparation of the attached draft Complaint, I gathered information from third party booking agent's website and other third party websites. This information may be old and not reliable; therefore, let me know any corrections that should be incorporated into the draft Complaint. Further, please review the attached 2010 Standards for Accessibility Design and, pursuant to 28 CFR §36.302(e), disclose which of the mobility requirements have not been met.

11. Strojnik's caution is grounded in recognition of a dangerous pattern in the evolution in ADA civil rights cases. Some ableist advocates rely on public disdain against the disabled as a furtive reconnaissance mission to determine whether the memorable observation by the Honorable Judge Melinda Harmon in *Gilkerson v. Chasewood Bank*, 1 F.Supp .3d 570, 596-97 (S.D. Tex., 2014) apply in their case. In *Gilkerson*, Judge Harmon displayed the courage to state what civil rights litigants know from experience:

> Testers have been an accepted and successful means of enforcing civil rights statutes under the Fair Housing Act and Title VII of the Civil Rights Act of 1964, although **a number of courts addressing Title III cases have been skeptical, and even hostile.** *See* Lee, *Giving Disabled Testers Access to Federal Courts,* 19 Va. J. Soc. Pol'y & L. at 321–23; Johnson, *Testers Standing up for Title III of the ADA,* 59 Case W. Res. L.Rev. at 689–702. "As a result of both the Attorney General's limited resources and the limited remedies available to Title III plaintiffs, 'most suits are brought by a small number of private plaintiffs who view themselves as champions of the disabled.'" *Betancourt v. Federated Dept. Stores,* 732 F.Supp. 2d 693, 701

---

[8] The Court will recall that the initial Complaint named "Torrey Pines Club Corporation dba The Lodge At Torrey Pines" as defendant. [1] Strojnik then learned that Torrey Pines Club Corporation was not the proper defendant, and accordingly amended the Complaint to name Evans Hotels, LLC in the FAC. [3]

4

(W.D.Tex.2010) *quoting Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1062 (9th Cir. 2007). (Emphasis supplied.)

12. ADA defendants' strategy is dangerous. ADA defendants are aware of a significant social undercurrent of the hostile skepticism toward ADA plaintiffs. By continuous filing of baseless, scurrilous and irrelevant documents, many defendants are simply attempting to awaken a potential skepticism in the court.

13. By seeking to arouse cynicism, Defendant artfully attempts to create an intolerable level of distrust between ADA plaintiffs and the Court. If the district court becomes swayed even most slightly, the Defendant benefits but Plaintiff suffers irremediable prejudice. The creation of uncertainty and mutual distrust is Defendant's end game.

14. The judiciary is the last and the only branch of the government still universally trusted by the public. Defendant's attempts to sow distrust is, on the case level, designed to benefit Defendant and prejudice Plaintiff. On the grander scale it seeks to diminish the trust in the judiciary to that of the executive and legislative.

15. The judiciary should never permit itself to be so swayed.

16. Congress declared that one of the purposes of the 2008 ADAAA is "to convey that it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis". *Id.* at §2(B)(5).

17. The term "disability" is neither a medical nor a vernacular term. It is a term of legal art defined as:

> "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> "(B) a record of such an impairment; or
>
> "(C) being regarded as having such an impairment (as described in paragraph (3)).

*Id.* at §4. The definition of "disability" must be construed in favor of broad coverage "to the maximum extent permitted by this Act". *Id.* §§4(D) and (E) further provide:

5

"(D) An impairment that is **episodic** or in **remission** is a disability if it would substantially limit a major life activity when active.

"(E)(i) The determination of whether an impairment substantially limits a major life activity shall be made without regard to the **ameliorative effects of mitigating measures** such as—

"(I) **medication**, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), **prosthetics including limbs and devices**, hearing aids and cochlear implants or other implantable hearing devices, **mobility devices**, or oxygen therapy equipment and supplies;

"(II) use of assistive technology;

"(III) reasonable accommodations or auxiliary aids or services; or

"(IV) learned behavioral or adaptive neurological modifications.

18. 28 C.F.R. 36.105, promulgated at congressional directive, further defines the term "disability". In short, episodic and remissive impairments, e.g., cancer, pleurisy, are to be considered as if active. Ameliorative effects of mitigating measures, e.g. medications such as celecoxib, naproxen and knee prosthesis, cannot be considered in determining whether a person has an impairment. *See Rohr v. Salt River Project Agricultural Improvement and Power District,* 555 F.3d 850, 21 A.D. Cases 964 (9th Cir. 02/13/2009) (Impairments are to be evaluated in their unmitigated state.) *Accord J.D. v. Colonial Williamsburg Foundation,* 18-1725 (4th Cir. 2019) (citing to *Rohr*).

19. Strojnik suffers from following impairments constituting ADA disability:
    1. prostate cancer[9] and genitourinary impairment[10]; and
    2. renal cancer[11]; and
    3. severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy[12]; and
    4. degenerative right knee (missing part of limb replaced with prosthesis)[13]; and
    5. Substantial limitation on the use of both shoulders, elbows and wrists to reach and twist; and
    6. Pleurisy; and

---

[9] Cancer is a disability impairment. 28 CFR 36.105(b)(2)
[10] 28 CFR 36.105(b)(1)(i)
[11] *Id.*
[12] Constitutes ADA disability. *Barlow v. Walgreen* (M.D. Fla. 8:11-cv-71-T-30EA, 2012)
[13] 28 CFR 36.105(d)(2)(iii)(D)

6

    7. Major depressive disorder, bipolar disorder, post-traumatic stress disorder; and
    8. Hypertension (200/100); and
    9. Record of (1) – (8); and
    10. Being regarded as having (1)-(8).

20. Items (1) and (2) are impairments as a matter of law. (3) has been ameliorated with nerve blocking medication and, when nerve blocking wears of, with prescription and over the counter medications, e.g. celecoxib and naproxen. (4) missing right knee is a disability impairment as a matter of law although it has been ameliorated with a prosthesis. (5) is ameliorated with celecoxib and naproxen and medical supervision. (6) is episodic with no amelioration. (7) is episodic with no amelioration. (8) is ameliorated with prescription medication, e.g. clonidine HCL.

21. In their unmitigated state, and when active, these impairments cause excruciating pain and discomfort requiring Strojnik so stay in place or use a wheelchair (as defined in 28 C.F.R. 36.104)[14] and substantially limit him from walking, standing, sitting, bending, sleeping, working, reaching. **NOTE:**

> (v) An impairment is a disability within the meaning of this part if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. **An impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting**[15]. (Emphasis supplied)

22. Strojnik claims disability status under all three prongs of "disability" as defined in the 2008 ADAAA and 28 C.F.R. 36.105. *See* Exhibits 6 and 7, respectively.

23. The following table is true:

**HOW STROJNIK'S ADA DISABILITIES "RELATE"** [16] **TO MAJOR LIFE ACTIVITIES AND BARRIERS TO ACCESSIBILITY**

| DISABILITY | RELATION |
| --- | --- |

---

[14] *Wheelchair* means a manually-operated or power-driven device designed primarily for use by an individual with a mobility disability for the main purpose of indoor or of both indoor and outdoor locomotion.
[15] 28 C.F.R. 105 (d)(v)
[16] .The barrier must "relate" to disability. *Doran v. 7- Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008)

| DESCRIPTION | DISABILITY PRONG | | | MAJOR LIFE ACTIVITY | 28 C.F.R. 36.105 REFERENCE |
|---|---|---|---|---|---|
| | Impairment | History Of | Reg'ed As | | |
| Prostate Cancer And Genitourinary Impairment | X | X | X | Major Bodily Function (normal cell growth, genitourinary, bladder reproductive) | (c)(1)(ii)<br>(d)(1)(iv)<br>(d)(1)(v)<br>(d)(1)(vi)<br>(d)(1)(viii)<br>(d)(2)((iii)(F)<br>(e)(1)(2)<br>(f)(1) |
| Renal Cancer | X | X | X | Major Bodily Function (normal cell growth) | (c)(1)(ii)<br>(d)(1)(iv)<br>(d)(1)(v)<br>(d)(1)(vi)<br>(d)(1)(viii)<br>(d)(2)((iii)(F)<br>(e)(1)(2)<br>(f)(1) |
| Severe Right-Sided Neural Foraminal Stenosis With Symptoms Of Femoral Neuropathy | X | X | X | Walking, standing, sitting, bending, sleeping, working | (c)(1)(i)<br>(d)(1)(iv)<br>(d)(1)(v)<br>(d)(1)(vi)<br>(d)(1)(viii)<br>(d)(2)((iii)(D)<br>(e)(1)(2)<br>(f)(1) |
| Degenerative Right Knee | X | X | X | Walking, standing, sitting, bending, sleeping, working | (c)(1)(i)<br>(d)(1)(iv)<br>(d)(1)(v)<br>(d)(1)(vi)<br>(d)(1)(viii)<br>(d)(2)((iii)(D)<br>(e)(1)(2)<br>(f)(1) |
| Limitation On The Use Of Both Shoulders, Elbows And Wrists To Reach And Twist | X | X | X | Performing manual asks, sleeping, reaching, lifting, writing, working | (c)(1)(i)<br>(d)(1)(iv)<br>(d)(1)(v)<br>(d)(1)(vi)<br>(d)(1)(viii)<br>(e)(1)(2)<br>(f)(1) |
| Pleurisy | X | X | X | Performing manual asks, sleeping, walking, reaching, lifting, writing, working, breathing | (c)(1)(i)<br>(d)(1)(iv)<br>(d))1)(v)<br>(d)(1)(vi)<br>(d)(2)((iii)(D)<br>(e)(1)(2)<br>(f)(1) |
| As Described in Dr. Lee's 8/1/18 Report | X | X | X | See Exhibit 8 and Placard, Exhibit 9. | (c)(1)(i)<br>(e)(1)(2)<br>(f)(1) |

24. Evans claims that Strojnik breached the Evans Consulting agreement and the Evans Settlement Agreement, Exhibits 10 and 11 respectively.

The Evans Consulting Agreement provided, in part:

> This letter will confirm that as of October 10, 2018, Peter Strojnik was asked by Evans Hotels, LLC, a hotel management company, to provide the type of accessibility information that a mobility disadvantaged guest may wish to review on a booking website or from an in house booking agent. Strojnik shall be paid a flat fee of $3,000, which shall include Strojnik providing template questionnaires on ADA compliance and consulting with Ms. De Beers regarding such matters.

25. It is undisputed that Strojnik provided the information. He provided DeBeers with the template questionnaire relating to 302(e)(1)(ii) disclosures and made himself available for additional consultation: In an e-mail exchange with Evans captive counsel, Ms. DeBeers, the latter admitted, *see* Exhibit 12:

On January 9, 2019, Strojnik e-mailed to DeBeers:

> I am not nearly as concerned with the resolution in the Bahia matter as you appear to be. The consulting agreement had been fully performed and the settlement agreement did not release The Lodge at Torrey Pines.

On January 18, 2019, DeBeers Responded:

> The Evans' engagement with you and Strojnik, PC remains both active and incomplete. The scope of your obligations are set forth in the October 10, 2018 engagement letter. **The first paragraph states that you would provide not only template questionnaires on ADA compliance, but also "consulting with Ms. DeBeers" on ADA compliance.** *The latter has not occurred.* Please let me know when you are available for a call, so that you can fulfill your obligations under the engagement letter.
>
> **It appears based on the documents you have sent that you stayed at The Lodge on December 8, 2018.** Your stay violates the non-patronage clause in the settlement agreement that you signed two months before your visit: "Strojnik . . . agrees not to visit, patronize, appear on, call, or otherwise come onto the property of Evans Hotels or any of its corporate affiliates (including The Lodge at Torrey Pines . . . ) for any purpose . . . " and is a clear violation of the settlement agreement. Please note that my client will aggressively defend and pursue all available remedies, including a counterclaim for breach of the consulting agreement and the settlement agreement, including recovery of attorney's fees under the fees clause therein.

Strojnik responded:

> **Indeed, if I had stayed at The Lodge at Torrey Pines that would have been a breach of the agreement for which your client would be entitled to actual damages and I would be entitled to enforce the ADA. But I did not stay there so your client has no contractual claim, but I do have the ADA and Unruh claims.**
>
> \*\*\*
>
> **I provided you with the template questionnaire as agreed and we consulted regarding it.**

On February 13, 2019, DeBeers emailed:

> **I find your statement that you did not stay at The Lodge rather strange, as your cover letter to Mr. Gross states the contrary.**

26. Thus, it is apparent that DeBeers either never read the letter to Mr. Gross or consciously disregarded it. The letter actually stated, "I *intended* to visit your Hotel on December 8, 2018". Strojnik actually never *visited* the hotel. The Complaint [1] and FAC [2] is based on 28 C.F.R. 36.302(e)(1)(ii) failure to disclose accessibility feature and the "actual knowledge" of disability barriers not from personal observations but from booking website and other sources[17].

27. De Beers' reading of the Settlement Agreement that "Strojnik…agrees not to visit, patronize, appear on, call or otherwise come onto the property of Evans Hotels or any of its corporate affiliates (including The Lodge at Torrey Pines, the Bahia Resort Hotel and the Catamaran Resort for any purpose without the prior written consent of Evans confirmed in writing by Evans General Counsel" is completely wrong for the following reasons:

    **First,** Strojnik never "visited, patronized, appeared on, called or otherwise came onto the property of … The Lodge at Torrey Pines".

    **Second,** The Lodge at Torrey Pines is neither owned by Evans or any of its affiliates. The Lodge at Torrey Pines is not Evans' "affiliate". It is a property that Evans manages. *See* Exhibit 12, June 9, 2019 e-mail from DeBeers "The

---

[17] The Complaint was designed to determine the scope of the *CREEC* decision.

Lodge at Torrey Pines [is] one of the properties we manage". *See* excellent discussion of who is and who is not an affiliate referenced in a settlement agreement. *Iqbal v. Ziadeh*, (Cal. App. Dist. 3 3/24/2017) (Exhibit 13)

**Third**, Evans would violate 42 U.S.C. §12203 and 28 C.F.R. 36.206 if it denied Strojnik, a disabled individual, lodging there.

28. Consequently, any claim that the lawsuit against Evans was "harassing" is preposterous. What is clear, however, is that Evans' entire breach of contract claim is abuse of process and, once resolved, will subject Evans to a claim for malicious prosecution.

DATED this 24th day of March, 2020.

PETER STROJNIK

Plaintiff

Mailed to the Southern District of California this 24th day of March, 2020.

And e-mailed to lawyers for Evans.

/s/

